**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02797-MSK-BNB

**VERNON L. HOWARD,**

    Plaintiff,

v.

**CITY AND COUNTY OF DENVER,**

    Defendant.

_____

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendant City and County of Denver's ("Denver") Motion for Summary Judgment **(# 22)**, Mr. Howard's response **(# 23)**, and Denver's reply **(# 24)**.

**FACTS**

The Court will briefly summarize the pertinent facts here, and elaborate as appropriate in its analysis. Mr. Howard was employed by Denver, in its Department of Parks and Recreation, as an Operations Supervisor.

In January 2010, Mr. Howard suffered a back injury, and took leave from his job pursuant to the Family and Medical Leave Act. In early March 2010, he exhausted his available leave, and Denver scheduled an "interactive process" meeting[1] with Mr. Howard to determine the extent to which his back condition constituted a disability under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and, if so, whether Mr. Howard's disability

---

[1] It is not clear whether any actual meeting was held.

1

could be reasonably accommodated by Denver. In anticipation of that meeting, Denver provided Mr. Howard with a "Reasonable Accommodation Questionnaire," along with copies of his job description and other materials, to be supplied to his doctor. On March 17, 2010, Mr. Howard's doctor completed the questionnaire, explaining that Mr. Howard suffered from an acute lower back strain, that the condition would persist for an unknown duration and would be easily aggravated by circumstances, and that Mr. Howard was unable to return to a position that required him to remain standing or lift objects, but that he was capable of performing desk work without any heavy or frequent lifting requirements.

Mr. Howard's doctor supplemented his response to the questionnaire on April 27, 2010, opining that Mr. Howard was fit to return to work as of May 4, 2010, albeit with certain restrictions, specifically: no frequent lifting of more than 20 pounds, with no repetitive lifting, bending, or stooping; and that "a desk job would be significantly more in the interest of Mr. Howard's continued recovery." In response, Denver informed Mr. Howard that it considered him to have a disability under the ADA, but that it did not consider him capable of performing the essential functions of his position as Operations Supervisor, due to his medical restrictions. Further, Denver concluded that it could not effect the transfer of Mr. Howard to another position consistent with his restrictions, both because all of its potential clerical positions required some bending and stooping, and because there were no vacant positions in any event.

The parties proceeded through additional administrative processes until Mr. Howard was ultimately terminated by Denver in June 2010. Mr. Howard maintains that he was ready and able to return to his position as Operations Supervisor as of May 2010. He contends that Denver's conclusion that he cannot perform the essential functions of that position is in error, in

that the particular physically-taxing tasks that Denver deems "essential" are not tasks that are actually performed by Operations Supervisors.

Mr. Howard commenced this action, asserting two claims: (i) disability discrimination in violation of the ADA; and (ii) disability discrimination in violation of C.R.S. § 24-34-401 *et seq.*

Denver now moves **(# 22)** for summary judgment on Mr. Howard's claims.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P.

56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.  ADA claim**

To be entitled to protection under the ADA, an employee must establish that he is a "qualified individual." 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability. . ."). A "qualified individual is one who "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The central issue in dispute with regard to Denver's motion is the question of what are the "essential functions" of the position of Operations Supervisor. More specifically, the issue is whether essential functions for this position include manual labor tasks of lifting heavy objects, operating machinery, picking up trash and debris, cleaning bathrooms, carrying bags of supplies

4

weighing up to 50 pounds, digging, raking, shoveling, etc. (These are functions identified by the Denver as being essential tasks of the position that Mr. Howard admittedly cannot perform.)

The ADA does not define the term "essential functions." Regulations interpreting the Act provide that "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires," as distinguished from "marginal functions." 29 C.F.R. § 1630.2(n)(1). Determining whether a particular function is "essential" or not is generally a factual inquiry, reserved for the finder of fact. *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 915 (10th Cir. 2004). Evidence that may be considered in determining whether a particular job function is "essential" includes: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time actually spent by employees performing the job function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the work experience of past and current incumbents in the job regarding the function. 29 C.F.R. § 1630.2(n)(3).

The Court finds that there is a genuine dispute of fact as to whether manual labor tasks are "essential" functions of the position of Operations Supervisor, such that a trial on that matter is required. Mr. Howard has come forward with substantial evidence supporting his contention that, until his request for accommodation, Denver did not generally treat manual labor tasks as essential components of the Operations Supervisor job. Mr. Howard points to a job description for the position, created by the Denver Civil Service Authority in December 2009.[2] That document describes the job of Operations Supervisor as being one who "performs supervisory duties over non-supervisory and/or working supervisory employees involved in the operation,

---

[2] Mr. Howard notes that Denver supplied this very job description to his doctor with the Reasonable Accommodation Questionnaire.

construction, maintenance, and/or repair of City facilities, infrastructure, parks, and urban forests." Under the heading of "Essential Duties," the job description lists items such as "supervises working supervisors and other staff members involved in the operation, construction, [etc.] of City facilities"; "plans, assigns, and evaluates the work of staff members"; "prepares work records and reports"; "reviews, develops, and/or modifies work plans, methods, and procedures"; conducts interviews, documents causes for disciplinary actions, etc. The listing of essential functions does not specifically indicate that an Operations Supervisor personally engages in manual or heavy labor; at best, that section states, as part of the "reviews . . . work plans" paragraph, that incumbents "provide[ ] work instruction, assist[ ] employees with difficult and/or unusual assignments, and encourages innovation."

Mr. Howard also points to testimony from other Operations Supervisors, such as Joseph Renteria, who testified about his own experiences in performing the job. Mr. Renteria was asked how much of his work time is spent performing "physical, manual labor," to which he responded:

> I really have gotten good and this is from coaching from my boss of not going out and doing all the manual labor anymore because it was a tough transition from maintenance tech to supervisor for me in that regard because I was used to being the person that had to go do whatever the fire was that needed to be put out. . .
>
> Juan, my boss. Juan Marsh has been coaching me to – you know, he says you need to see that you're on the other side now, Joe. You're on the supervisor side. You need to coach your people, you need to work with your people, and you need to teach them how to take care of their responsibility.

Mr. Renteria opined that he might spend five to ten percent of his time doing manual labor (but seemed to acknowledge that he did so because "it's fun and I see immediate benefits of it," even though it appeared that his supervisor discouraged it). He explained that "if my guys are busy

6

doing something, it would be really stupid to call the guys that are doing trash because I see a broken bottle at the park that I'm at. That's ridiculous to call them from what they were doing to come clean up a broken bottle," so presumably, Mr. Renteria would do it.

Mr. Howard also tendered the testimony of his former boss, James Kellner. Mr. Kellner was asked whether Operations Supervisors do physical labor, and responded:

> I would not want them to. There's just too much within the district
> for them to be doing. If they're -- if they are doing too much,
> pulling leaves, picking up trash, mowing, then there's [not?] going
> to be a lot of oversight on park inspections, playground
> inspections, those kinds of things.

Asked whether Operations Supervisors engage in "physically squatting, bending, stooping [or] lifting tools daily," Mr. Kellner responded "maybe in assisting others, but not as a rule. That would be the exception, not the rule."

This evidence stands in sharp contrast to that offered by Denver, including: testimony from Jill Coffman, Mr. Howard's supervisor, that she expected Operations Supervisors (including Mr. Howard) to "assist the personnel they supervise, which necessarily includes the performance of manual labor and physical tasks" of the types listed above; testimony from Doug Woods, Director of the Parks Department, that he considered Operations Supervisors to be "working supervisors . . . expect[ed . . .] to spend time in the field with their crews and assist them with their daily assignments, which necessarily involves the performance of manual labor"; and the contents of a revised Operations Supervisor job description, issued in September 2011, which includes among the essential functions the fact that the incumbent "performs the duties of the positions supervised."

Thus, it is clear to the Court that there is a genuine dispute of fact as to precisely what tasks are "essential" to the position of Operations Supervisor. Although the ADA permits an

7

employer the discretion to "establish or change the content, nature, and functions of a job," and the courts give deference to an employer's judgment as to what functions are and are not essential, the fact remains that there is a genuine dispute as to whether Denver expected and required operations supervisors to regularly perform manual labor tasks. *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995). Denver may believe that Ms. Coffman and Mr. Woods' testimony that they expected Operations Supervisors to perform such tasks (especially following a 2009 reorganization of the Parks Department) is dispositive of the matter, but the record reflects that notwithstanding that alleged change, Denver's written job descriptions and the actual performance of the jobs by incumbents did not conform to such expectations. Under these circumstances, the question of whether manual labor tasks were essential functions of the Operations Supervisor job will have to be resolved by a jury at trial.

Once the Court finds that there is a genuine dispute of fact as to whether Mr. Howard could perform the essential functions of the Operations Supervisor position, the remainder of Denver's arguments for summary judgment on his ADA claim fall as well. The fundamental premise of Denver's arguments was that no reasonable accommodation could be achieved to permit Mr. Howard to return to work with the restrictions placed upon him by his doctor on April 27, 2010. But the record is clear that Mr. Howard's inability to perform the "essential" manual labor tasks was the basis upon which Denver concluded that he could not be accommodated, and thus, if a jury concludes that such manual labor tasks were not "essential" to the Operations Supervisor position, the ADA requires that Denver modify the job to omit such non-essential functions to permit Mr. Howard to resume working in that position. *Bartee*, 374 F.3d at 915; 29 C.F.R. §1630.2(o)(1)(ii) (reasonable accommodation means "modifications or adjustments to . .

. the manner or circumstances under which the position . . . is customarily performed, that enable an individual . . . to perform the essential functions of that position").

Accordingly, Denver's motion for summary judgment on Mr. Howard's ADA claim is denied.

### C. State law claim

Mr. Howard also asserts a claim for disability discrimination under C.R.S. § 24-34-401 *et seq.* That statute provides that "it shall be a discriminatory or unfair employment practice for an employer . . . to discharge . . . any person otherwise qualified because of disability . . . ." C.R.S. § 24-34-402(1)(a). Colorado law expressly contemplates a private right of action based on an alleged violation of this statute. C.R.S. § 24-34-306(2)(b)(I)(B) (Colorado Civil Rights Division shall advise any charging party that "if the charging party wishes to file a civil action in a district court in this state based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the commission, he or she must do so" within a specified time).

Denver offers several arguments with regard to Mr. Howard's state law claim. The first consists of a single sentence: "The Court lacks subject matter jurisdiction" over Mr. Howard's state law claims. No supporting authority is cited.[3]

---

[3] Denver's brief follows this sentence with an assertion that remedies under the Colorado Anti-Discrimination Act "are only incidental" to administrative enforcement mechanisms. *Citing Brooke v. Restaurant Services, Inc.*, 906 P.2d 66, 71 (Colo. 1995). The citation is inapposite. *Brooke* held that the private right of action created by the Colorado Anti-Discrimination Act did not supplant existing common-law remedies for employment discrimination, in part because it does not "provide e a comprehensive scheme for addressing sex discrimination in the workplace that otherwise would indicate . . . the legislature's intent to preclude common law claims." *Id.* at 68. *Brooke* certainly does not stand for the proposition that the courts lack subject matter jurisdiction over private discrimination claims under state statutory law; if anything, it strongly suggests that such a private right of action exists. *Id.* at 72 (referencing "an individual claimant [bringing claims] pursuant to the Act").

Next, Denver argues that remedies under the state statute a limited to those listed in C.R.S. § 24-34-405, and these do not include items of damages claimed by Mr. Howard, including front pay, various other forms of economic damage, compensatory damages, etc. The mere fact that Mr. Howard has made a single Prayer for Relief in this case, even though some of his requested remedies are not available under both statutes, is not a basis for dismissing his state law claim. The Court is confident that in the situation that Mr. Howard fails on the ADA claim but prevails on his state-law claim, the Court can award him only those items of relief cognizable under state law.

Accordingly, Denver's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Denver's Motion for Summary Judgment **(# 22)** is denied in its entirety. The case will proceed to trial. The parties shall jointly contact chambers, within 7 days of this Order, to schedule a Pretrial Conference and shall begin preparation of a Proposed Pretrial Order as directed in the Court's previously-issued Trial Preparation Order **(# 13)**.

Dated this 19th day of March, 2013.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge